# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ALISA M. WHITE,                                   )
      Plaintiff,                                )
v.                                                )      Case № 4:25-cv-702-BSM
                                                  )
BOARD OF TRUSTEES OF THE                          )
UNIVERSITY OF ARKANSAS;                           )
KELLY EICHLER, BOARD                              )
MEMBER OF THE UNIVERSITY                           )
OF ARKANSAS BOARD OF                              )
TRUSTEES, in her official capacity,               )
STEVE COX, BOARD MEMBER                            )
OF THE UNIVERSITY OF                              )
ARKANSAS BOARD OF                                 )
TRUSTEES, in his official capacity,               )
ED FRYAR, BOARD MEMBER                             )
OF THE UNIVERSITY OF                              )
ARKANSAS BOARD OF                                 )
TRUSTEES, in his official capacity,               )
TED DICKEY, BOARD                                 )
MEMBER OF THE UNIVERSITY                           )
OF ARKANSAS BOARD OF                              )
TRUSTEES, in his official capacity,               )
JEREMY WILSON, BOARD                               )
MEMBER OF THE UNIVERSITY                           )
OF ARKANSAS BOARD OF                              )
TRUSTEES, in his official capacity,               )
COL. NATHANIEL TODD, BOARD                         )
MEMBER OF THE UNIVERSITY                           )
OF ARKANSAS BOARD OF                              )
TRUSTEES, in his official capacity,               )
KEVIN CRASS, BOARD MEMBER                          )
OF THE UNIVERSITY OF                              )
ARKANSAS BOARD OF                                 )
TRUSTEES, in his official capacity,               )

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 11 2025

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

This case assigned to District Judge Miller
and to Magistrate Judge Kearney

SCOTT FORD, BOARD MEMBER )
OF THE UNIVERSITY OF )
ARKANSAS BOARD OF )
TRUSTEES, in his official capacity, )
RANDY LAWSON, BOARD )
MEMBER OF THE UNIVERSITY )
OF ARKANSAS BOARD OF )
TRUSTEES, in his official capacity, )
JUDD DEERE, BOARD MEMBER )
OF THE UNIVERSITY OF )
ARKANSAS BOARD OF )
TRUSTEES, in his official capacity, )
TRACY TUCKER, individually and )
in her official capacity as )
VICE CHANCELLOR of )
UNIVERSITY OF ARKANSAS AT )
MONTICELLO, and DAWN REED )
individually and in her official )
capacity as ASSISTANT VICE )
CHANCELLOR of UNIVERSITY )
OF ARKANSAS AT )
MONTICELLO )
      Defendants. )

## **COMPLAINT**

Plaintiff Alisa M. White pleads her complaint against Defendants Board of Trustees of the University of Arkansas; Kelly Eichler, Board Member of the University of Arkansas Board of Trustees, in her official capacity, Steve Cox, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Ed Fryar, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Ted

Dickey, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Jeremy Wilson, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Col. Nathaniel Todd, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Kevin Crass, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Scott Ford, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Randy Lawson, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Judd Deere, Board Member of the University of Arkansas Board of Trustees, in his official capacity; Tracy Tucker, individually and in her official capacity as Vice Chancellor of University of Arkansas Monticello; and Dawn Reed, individually and in her official capacity as Assistant Vice Chancellor of University of Arkansas:

  1. This case is about a community college vice chancellor's and assistant vice chancellor's discrimination and retaliation against a long-term instructor following her request for protected leave under the Family and Medical Leave Act, in violation of that statute; discrimination against that instructor due to her disability, creation of a hostile work

environment, and retaliation against that instructor due to her requests for a reasonable accommodation, all in violation of the Americans with Disabilities Act, as amended, and the Arkansas Civil Rights Act.

2.      Alisa M. White is and was at all times relevant to this Complaint a resident and citizen of Crossett, Ashley County, Arkansas. She was employed as a workforce education instructor, more specifically as an Early Childhood Education Instructor, at the University of Arkansas at Monticello for 14 years before her constructive discharge.

3.      The University of Arkansas at Monticello is a part of the University of Arkansas System, the Board Members of which are Kelly Eichler, Steve Cox, Ed Fryar, Ted Dickey, Jeremy Wilson, Col. Nathaniel Todd, Kevin Crass, Scott Ford, Randy Lawson, Judd Deere. The Board of Trustees of the University of Arkansas are sued in their official capacities only, and not for relief other than prospective injunctive relief.

4.      Defendant Tracy Tucker is and was at all times relevant to this Complaint a resident and citizen of Hamburg, Ashley County, Arkansas. She acted at all times relevant to this Complaint in the course and scope of her authority at the Vice Chancellor or Dean of the University of Arkansas at Monticello College of Technology — Crossett.

Tucker was the de facto decision maker and person authorized to execute policy for that institution. Tucker may be served with process at 413 S. Cherry Street, Hamburg, Arkansas 71646. Tucker is being sued both individually for money damages under the FMLA and in her official capacity for prospective injunctive relief under all other claims. Plaintiff seeks both prospective injunctive relief and damages against Tucker.

5.    Defendant Dawn Reed is and was at all times relevant to this Complaint a resident and citizen of Crossett, Ashley County, Arkansas. She acted at all times relevant to this Complaint in the course and scope of her authority at the Assistant Vice Chancellor or Dean of the University of Arkansas at Monticello College of Technology — Crossett. Reed may be served with process at 504 Walnut Street, Crossett, Arkansas 71635. Reed is being sued both individually for money damages under the FMLA and in her official capacity for prospective injunctive relief under all other claims. Plaintiff seeks both prospective injunctive relief and damages against Reed.

6.    Jurisdiction is appropriate in this Court based on federal question jurisdiction and an amount in controversy in excess of $75,000.00, exclusive of interest and costs, and diversity of citizenship. 28 U.S.C. §§ 1331 & 1332. There is also supplemental jurisdiction over the

state-law causes.   Venue is appropriate in the Eastern District of Arkansas, Central Division.

7.     All of the named Defendants herein are and were are at all times relevant to this complaint acting jointly, severally, or individually, if applicable in the course and scope of their agency with the "University of Arkansas at Monticello" which was the employer of White.   The University of Arkansas at Monticello is a college located in Monticello, Drew County, Arkansas, with satellite campuses in and around it.  One such campus is and was at all times relevant to this Complaint the University of Arkansas at Monticello College of Technology – Crossett. Plaintiff and Defendants Tucker and Reed worked at the Crossett campus. The Defendants are collectively referred to as "The University of Arkansas at Monticello" or "UAM."

8.     At all times relevant to this complaint, UAM was engaged in commerce or in an industry affecting commerce and employed fifteen or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.   At all time relevant to this complaint, UAM was engaged in commerce or in an industry affecting commerce and employed fifty or more employees for

each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.  White was employed by UAM at its Crossett, Arkansas, campus, which is an area where UAM Arkansas employed fifty or more employees within a 75-mile radius.  UAM was an employer or person acting in the interest of the employer as defined by the FMLA, ADA, and ACRA.

9.    White was employed as an Early Childhood Education Instructor at the University of Arkansas at Monticello College of Technology in Crossett beginning in August 2010. White has documented impairments, including rheumatoid arthritis, uncorrectable venous insufficiency, plantar fasciitis, and neuropathy, which substantially interfere with major life activities of walking and standing for extended periods.  Her impairments qualify as disabilities under the Americans with Disabilities Act, as amended.  Her conditions were also serious health conditions as defined by the Family and Medical Leave Act. White's impairments never affected her job performance, with a reasonable accommodation.

10.    On or before August 17, 2023, at 1:58 P.M. White was formally approved accommodation for her disabilities.  An accurate copy

of the email approving those accommodations is attached as Exhibit A and incorporated by reference.  Tracy Tucker, Vice Chancellor at UAM in Crossett, and Dawn Reed, Assistant Vice Chancellor at UAM in Crossett, were informed in an email of White's approved accommodations on or before August 17, 2023.  White was approved for limited weight bearing and limited standing at all times.  She was given an overall assessment of mobility concerns with duties and assignments.  That email was sent to Tracy Tucker and Dawn Reed. Shortly after the email was sent, and on that same day, Reed made mocking gestures in passing towards White that White reasonably interpreted to be gestures mocking her disability.

11.    Almost five hours later, at 6:49 P.M., Reed emailed the entire faculty and staff at the University of Arkansas at Monticello in Crossett commenting on two other faculty members who had "emergency surgeries" during the week but "continued to enroll and help students while in the hospital bed!"  An accurate copy of that email is attached as Exhibit B and incorporated by reference.  This email evidenced Reed's animus towards persons who were unable to work due to a disability, and expectation that persons with injuries or limiting medical conditions continue working despite their serious medical conditions.

12.    On September 22, 2023, a report for outside employment was emailed to the "Deans," which included Tucker. Those reports were due back by September 25, 2023. An accurate copy of that email is attached as Exhibit C and incorporated by reference. This form was transmitted to White on September 25, 2023, at 1:27 P.M. An accurate copy of that transmittal email is attached as Exhibit D and incorporated by reference.

13.    White submitted her form to Tucker on or about September 25, 2023, for January 1, 2024, to December 31, 2024. An accurate copy of that form, with excerpts of the university policies on outside employment, are attached as Exhibit E and incorporated by reference. White had been previously approved for outside employment for many years in the same role for additional pay by that outside employer by a previous vice chancellor at UAM. This outside employment generated significant income to White, which she had come to depend upon, and was part of the job duties and benefits she enjoyed as an instructor at UAM. White indicated as much in response to an email from Reed to White requesting proof of prior outside employment from July 1, 2022, to June

30, 2023. An accurate copy of that email is attached as Exhibit F and incorporated by reference.

14. White requested FMLA leave for treatment of a serious health condition in September 2023, submitting that request on or before her completion of the outside employment form. This was protected activity under the FMLA. White indicated her treatment would conclude before the end of 2023. Within days of that request, and less than a month from it, on September 28, 2023, Tucker met with White. Tucker memorialized her understanding of that meeting in a 5:06 PM email on September 28, a copy of which is attached as Exhibit G and incorporated by reference.

15. In that email, Tucker recited that "Dr. White indicated that she has issues standing. This is particularly an issue at graduation." Tucker also admitted, in writing, that she was revoking White's permission to attend an Early Childhood Conference, and that Tucker would not approve White's concurrent employment form for January 1, 2024 "**due to the impending FMLA**. Discussion was held about the need for our students and school to be the priority and this would be revisited at a later date, but it is not, at this time, approved." *Exhibit G* (emphasis

added). This email is direct evidence of Tucker's discriminatory animus towards White due to her disability and request for FMLA leave. Even after White returned to work, Tucker and UAM refused to reconsider White's requests for approval of her previous, long-allowed outside employment.

16.    Other similarly situated employees who had not requested FMLA leave or requested an accommodation for a disability, however, had no problem getting approval for outside work. White informed Tucker that her outside work had already been approved by the former Vice Chancellor Linda Rushing. On September 28, 2023, during the meeting between Tucker, White, and Mary Whiting, UAM Director of Disability, Tucker said that White was a "low performing employee," which was not true. Whiting interrupted Tucker and asked how White's overall performance was, but Tucker refused to answer Whiting's question. White only had positive performance reviews during her previous 13 years and had no written disciplinary actions or warnings in her file.

17.    To help White follow her doctor's orders and lessen the pain caused by her disabilities, White's former Vice Chancellor Linda Rushing scheduled beginning on or about January 10, 2020, White's instructor

-11-

course load as online, hybrid, and in-person (but on non-consecutive days) class meetings. For more than three years and nine months, White was able to work with this reasonable accommodation. On or about October 1, 2023, again within 30 days of White's request for FMLA leave, Tucker (who replaced Linda Rushing) sent an email to White changing this critical accommodation and practice for White's disability. An accurate copy of that email is attached as Exhibit H and incorporated by reference.

18.    In that email, Tucker stated "UAM-CTC does not have permission/approval to offer our early childhood (EC) "programs" online, meaning no more than 50% of the program classes required for a CP, TC, or associate degree, can be offered in an online format. We have been in violation of that requirement. Therefore, I am making a change to the following courses for the spring." As noted in Tucker's email, Tucker scheduled White's Spring 2024 course to meet on four consecutive nights, which had not occurred during the prior five years as a prior accommodation due to White's disability. Tucker scheduled the Spring 2024 "Technical Math" course as an online course taught by Ginnie Sellers, UAM-CTC Math Instructor and White's non-disabled peer, however, further evidencing the disparate treatment of White due to her

protected activities, disability, and request for a reasonable accommodation.

19.    Tucker emailed White three days later saying that being eligible for FMLA leave and approved for FMLA leave are not the same thing, on October 4, 2023.  The tenor of this email indicated Tucker did not want White to exercise her right to FMLA leave.  An accurate copy of that email is attached as Exhibit I and incorporated by reference.  This email further evidences Tucker's continued animus towards persons exercising their rights under the FMLA, persons with a disability, and persons who have requested a reasonable accommodation for those disabilities.   White took FMLA leave from October 10, 2023, until December 14, 2023, but even after returning to work she was not approved for outside employment by Tucker despite her repeated requests to restore that approval.

20.    During the early Spring 2024 semester, Susanna Ballard, UAM-CTC Administrative Office Technology Instructor and non-disabled instructor at UAM, received a student complaint because she would not allow the student to do homework during class.  The student reported a complaint to Katie Manzella, (now resigned) UAM-CTC Director of

Student Service Coordinator (SSC). At about the same time, one of White's students complained to the SSC after White marked her late and required students to write their PDR numbers on the class sign in sheet. PDR were state-mandated hours required for certain early childhood education certifications. White had required her students to keep track of those numbers and report them to her previously without incident, and as part of her instruction of those future educators.

21.     On February 7, 2024, the directors of student services (SSC), Manzella emailed White requesting that she meet with her in her office to discuss White's attendance policy for her classes. An accurate copy of that email is attached as Exhibit J and incorporated by reference. Tucker was copied on the email. White met with the SSC in her office on February 8, 2024.

22.     After approximately 10 minutes into the meeting, Tucker entered the room, shut the door, and informed White that her attendance policy was too strict, and that White's students' PDR numbers were "not my problem." White responded that requirement was written in her syllabus, at which time, Tucker turned from facing White and viewed her syllabus that the SSC had displayed on her desktop computer. After

-14-

viewing White's syllabus, Tucker turned to White and said, "We have not approved your syllabus yet." White knew Tucker was not being honest, became fearful, her heart began to race, and White felt burning pain in her feet and ankles, as her neuropathy flared up. White wanted out of that office and away from the pain Tucker was causing her, but she was standing too close to the office door and such actions could have been cause for Tucker to write her up as insubordinate. White endured this illegal disparate and unfair treatment in pain.

23.    On February 26, 2024, White emailed Tucker to see if she could attend a conference that would benefit her program and was at no cost for UAM. Tucker called White into her office alleging the conference was paid for because White was externally working again reiterating that White was not allowed to do any outside work. White was not, in fact, performing outside work without permission. Tucker approved the training but changed her mind two days later because White would miss an April 2024 faculty meeting. Other faculty members who had not requested reasonable accommodations, were not disabled, and who had not exercised their right to FMLA leave, were allowed to be excused from previous faculty meetings. The stated reason for the mandatory

attendance in April 2024 was the need to discuss attendance, but attendance was discussed at every faculty meeting. This treatment further evidence Tucker's disparate and retaliatory treatment of White.

24. On March 1, 2024, White continued notifying her supervisors Tucker and Reed that she had trouble standing or walking for long periods of time without breaks, in relation to judging at an event. An accurate copy of that email is attached as Exhibit K and incorporated by reference.

25. On March 5, 2024, Susanna Ballard, UAM-CTC Administrative Office Tech Instructor told White that Katie Manzella, SSC, resolved her student complaint via email without further response from White, which was not the manner by which White's student complaint was resolved on February 8, 2024. White's disparate treatment continued.

26. On March 6, 2024, White told UAM Human Resources what Tucker had done to her in Manzella's office, how fearful she was of Tucker, and how it caused flare ups and burning pain in White's feet. This was a protected activity under the FMLA and ADA. White also brought her outside employment form to HR and requested that someone at UAM

approve her request for outside employment, but UAM's HR refused. This was protected activity under the FMLA as a further attempt to return to her previous benefits before she requested FMLA leave. HR then emailed White four times telling her that she had to meet with Tucker. Requiring a person complaining of illegal conduct to meet with their supervisor about whom the person is complaining was not a stated part of the official complaint policy at UAM. HR insisted White needed to meet with Tucker to work out their differences.

27. On March 6, 2024, White reported to HR personnel the harassment and discrimination she had been subjected to because of her disability, request for FMLA leave, and requests for a reasonable accommodation. White was informed the internal complaint process began with White expressing to Tucker and Reed that their behavior was unwelcome and must stop. On March 7, 2024, White spoke with UAM's HR and again reported that other faculty had been approved for outside employment but she was not being approved in violation of her rights under the FMLA, ADA, and law. This was another protected activity under the FMLA and ADA. UAM's HR responded that White did not "know what Tucker has done for other faculty." Before White had the

opportunity to directly tell Tucker and Reed to cease their discriminatory behavior after this call from HR, however, Reed came into White's classroom on March 8, 2024, again harassing White and treating her differently.

28.    On March 11, 2024, White informed Tucker and Reed that their behavior was unwelcome and had to stop as required by UAM HR. This was protected activity under the FMLA and ADA.  A few days later, Tucker requested that White meet with her to discuss White's complaint. White then inquired into the UAM harassment policy with HR, which informed White that the next step would be to meet with Tucker. Tucker also sent White an email in hopes of persuading her to meet with her. UAM's policy did not require White to meet with the person discriminating against her as the next step of the internal process, so White declined.

29.    On March 11, 2024, White sent an email to Tucker, Reed, and Human Resources that included letters from Dr. Nureddin (White's heart doctor) and Dr. Mallepalli (White's RA doctor) that stated, "It is not recommended that Ms. White be on her feet standing on any consecutive days while working. . . . with continued joint pain, stiffness, and swelling,

working 4 nights in a row is causing the neuropathy to flare in her feet, especially. It would be in Dr. White's best interest to have an interrupted work schedule." An accurate copy of that email, with attachments is attached as Exhibit L and incorporated by reference. In her email, White noted that she did not need to be on her feet unless it was necessary. This was further protected activity under the FMLA and ADA.

30.     On March 12, 2024, Tucker sent an email to Reed and White about White's report of disparate treatment and uncomfortable interactions with Reed. Central to this dispute was White's apparent failure to obtain writing pens in an interaction with Reed, where Reed raised her voice at White and made a face at her. An accurate copy of that email is attached as Exhibit M and incorporated by reference. This incident further evidences Reed's discriminatory and retaliatory animus towards White, which was creating a hostile work environment.

31.     On April 1, 2024, less than 30 days from receipt of White's documented need to not stand for long, consecutive periods of time due to her disability, Tucker scheduled White to teach 4 consecutive nights in-person for the Fall 2024 semester with "Environment in EC" to be taught as an in-person course.     Tucker also took White's "Tech Child

Development" course away from White (which she had taught for the previous 14 yrs) and assigned non-disabled peer, Amy Blankenship, UAM-CTC Early Childhood Education Adjunct Instructor to teach it, but Tucker changed "Environments in EC" (which was scheduled for White to teach as in-person course) to an online course to accommodate the request of White's non-disabled replacement instructor, Elizabeth Nowlen, UAM-CTC Early Childhood Education Adjunct Instructor. These actions were retaliatory and continued the pattern and practice of illegally discriminating against White.

32.    The UAM Technical Campus Annual Report 2022-23 states, "changes that may be considered to better meet the University's goals," reads, "Table1: Assessment of Key Performance Indicators, Implications for Future Planning Change: continue to increase the availability of online/hybrid classes to accommodate employed/nontraditional students"; and the report notes a count of online/hybrid continuing courses, which include online/hybrid courses White was permitted to teach under former VC Linda Rushing. Tucker retaliated against White and treated her differently despite her protected activities and in defiance of White's

request for a reasonable accommodation by scheduling White to teach 4 consecutive nights in a row in-person.

33.     On April 2, 2024, White was contacted by HR regarding her previous complaints and told that a different vice chancellor could be designated to hear White's concerns if she wanted to continue with the informal resolution process.  An accurate copy of that email exchange is attached as Exhibit N and incorporated by reference.  White inquired about this offer on May 8, 2024.  An accurate copy of that email exchange is attached as Exhibit O and incorporated by reference. On May 8, 2024, White was then told by UAM HR that she only had a 30-day time limit for previous complaints and if a new incident occurred within the past 30 days, they needed to know what informal resolution steps she had taken. White again complained to UAM's HR by email on May 8, 2024, that Tucker's refusal to allow White to obtain outside employment due to her exercise of her rights under the FMLA was illegal.  It had become clear to White by this time that UAM's HR would not stop the illegal discrimination and harassment she was experiencing from Tucker and Reed.

34.    Prior to the harassment from Tucker and Reed, White's work value and satisfaction of teaching students was positive. The treatment that White was receiving from Tucker and Reed was taking a dreadful toll on both White's mental and physical health, which forced her to make the decision to resign her position on August 8 2024, amounting to a constructive discharge. White felt as if she had no choice but to end her employment due to the persistent and unending harassment and discrimination she was enduring. White further knew she could not teach a course four consecutive nights in a row, in person, given her disabilities, which UAM had persistently refused to accommodate.

35.    On or about June 17, 2024, White timely filed a charge of discrimination with the Equal Employment Opportunity Commission. An accurate copy of that charge is attached as Exhibit P and incorporated by reference. White updated her information before the EEOC to notify it of her constructive discharge on August 8, 2024, during the pendency of the EEOC investigation. On or about April 14, 2025, the EEOC issued a notice of right to sue letter. An accurate copy of that letter is attached as Exhibit Q and incorporated by reference. This case is being filed within 90 days of White's receipt of that notice of right to sue. All claims asserted

herein required to be exhausted before the EEOC were exhausted before the EEOC.

36.    As a direct consequence of UAM's disparate treatment of, retaliation, and constructive discharge of White, she has experienced damage, including lost wages, lost benefits, retirement, paid time off, back pay, front pay, emotional distress, attorney's fees, and other costs, for which she should be compensated, including all remedies allowed by law.

37.    Plaintiff also seeks an end to this discrimination and illegal conduct by prospective injunctive relief, an order for Defendants to comply with the Family and Medical Leave Act, Americans with Disabilities Act, and Arkansas Civil Rights Act moving forward, reinstatement to her previous job, posting of this verdict and judgment to clear her name, training for the Defendants and UAM's HR department on proper conduct towards disabled persons and persons engaging in protected activity under federal law, and for all other relief to which she may be entitled.

## COUNT I - FMLA INTERFERENCE/ENTITLEMENT

38.    White reincorporates and re-alleges paragraphs 1 through 37 by reference.

39.    At all times relevant to this complaint, UAM was a covered employer and White was a covered employee under the Family and Medical Leave Act.  29 U.S.C. §§ 2601–2654.  UAM met all of the statutory standards for coverage.  29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3).  At all times relevant to this complaint, White was a covered employee under the FMLA.  29 U.S.C. § 2611(2)(A), *et sequentes*.  White had been employed by UAM for at least twelve months and worked at least 1,250 hours during the previous twelve month period.

40.    White suffers from a serious health condition as defined by the FMLA.  She was diagnosed with a major medical condition that impairs her ability to stand and sit for prolonged periods of time.  29 C.F.R. § 825.113; 29 C.F.R. § 825.115.  White obtained a medical certification regarding her serious health condition and timely communicated it to UAM as soon as practicable.  29 C.F.R. §§ 825.302–825.304.  In the alternative, White provided UAM with sufficient information for UAM to reasonably determine that the FMLA applied to White's request for approved leave.  UAM accepted White's FMLA claim

-24-

and approved her for FMLA-protected leave and should be equitably estopped from now taking a contrary position.

41.    The FMLA proscribes any action by UAM to interfere with, restrain, or deny White the protections provided by the FMLA. 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 825.220. White had an absolute right under the FMLA to return to her previous position in effect before her request for FMLA leave upon the completion of her FMLA leave in accordance with the United States Department of Labor's interpretations of the FMLA. Specifically, the FMLA required UAM to allow White to return to her position as an early childhood educator without adverse changes in her ability to hold outside employment, and without general harassment and discrimination.  UAM failed to follow the FMLA by interfering with, restraining, and denying White that right:

a.    UAM planned to discourage and otherwise deny White from exercising her rights under the FMLA soon after she requested FMLA leave;

b.    UAM did, in fact, deny White her rights by changing her benefits and job duties;

c.      UAM repeatedly, and at times expressly, interfered with and exhibited animus toward White due to her desire to exercise her FMLA leave, and actual leave protected by the FMLA;

d.      UAM treated White differently than persons who had not exercised their rights protected by the FMLA by denying her outside employment, changing her job duties, falsely berating her as "low performing" and for requiring her students to report attendance and PDR hours, revoking her request to attend conferences, removing her accommodations to work non-consecutive in person classes, requiring her to meet with Tucker despite her complaints about her, revoking the offer for White to meet with a different vice chancellor, and constructively discharging her;

e.      UAM denied White restoration to her previous work with the same conditions and benefits, in violation of the FMLA;

f.      UAM has shifted its explanations about its purported reasons for denying White's right to return to job restoration under the FMLA; and

g.      UAM further intimidated and discouraged White's exercise of her FMLA rights through these actions.

42.    UAM has therefore denied White substantive rights under the FMLA for reasons connected with her FMLA leave.  It will be UAM's burden to prove it would have terminated White regardless of her FMLA leave.  *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 714–15 (8th Cir. 2008).  And UAM's burden to prove the applicability of any FMLA exemption.  It cannot meet these burdens.

43.    White's leave from work and continuing health issues which might necessitate further time away from work were the motivating factors in UAM's decision to deny White restoration to her job benefits and disparate treatment, although UAM's intentions are not relevant to an FMLA interference claim.

44.    UAM's violation of the FMLA was not in good faith and UAM has no reasonable grounds for believing its acts and omissions complied with the FMLA.

45.    White seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual

monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief. 29 U.S.C. § 2617; 29 C.F.R. § 825.220.

## COUNT II - FMLA DISCRIMINATION

46.     White reincorporates and re-alleges paragraphs 1 through 45 by reference.

47.     At all times relevant to this complaint, UAM was a covered employer and White was a covered employee under the Family and Medical Leave Act. 29 U.S.C. §§ 2601–2654. UAM met all of the statutory standards for coverage. 29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3). At all times relevant to this complaint, White was a covered employee under the FMLA. 29 U.S.C. § 2611(2)(A), *et sequentes*. White had been employed by UAM for at least twelve months and worked at least 1,250 hours during the previous twelve month period.

48.    White suffered a serious health condition as defined by the FMLA. She was diagnosed with a major medical condition. 29 C.F.R. § 825.113; 29 C.F.R. § 825.115. White obtained a medical certification regarding her serious health condition and timely communicated it to UAM as soon as practicable. 29 C.F.R. §§ 825.302–825.304. In the alternative, White provided UAM with sufficient information for UAM to reasonably determine that the FMLA applied to White's request for approved leave. UAM accepted White's FMLA claim, approved her for FMLA-protected leave, and should be equitably estopped from now taking a contrary position.

49.    The FMLA proscribes any action by UAM to interfere with, restrain, or deny White the protections provided by the FMLA taken because the employee exercises rights to which she is entitled under the FMLA. 29 U.S.C. § 2615(a)(1); *Burciaga v. Ravago Americas, LLC*, 791 F.3d 930 (8th Cir. 2015). UAM cannot take materially adverse employment actions against White that are motivated by White's exercise of her FMLA rights. White had an absolute right under the FMLA to request FMLA leave, exercise that leave, to not be discouraged from taking FMLA leave by treating her differently and by failing to return to

her previous position in accordance with the United States Department of Labor's interpretations of the FMLA. The FMLA required UAM to allow White to request FMLA leave, take that leave, and return to her position with the same benefits intact. UAM was legally obligated to refrain from modifying that position or denying reinstatement in restraint of and in interference with her request for FMLA leave. UAM nevertheless discriminated against White and treated her differently because of her attempts to exercise her rights under the FMLA:

   a.     UAM planned to discourage and otherwise deny White from exercising her rights under the FMLA soon after she requested FMLA leave;

   b.     UAM did, in fact, deny White her rights by changing her benefits and job duties;

   c.     UAM repeatedly, and at times expressly, interfered with and exhibited animus toward White due to her desire to exercise her FMLA leave, and actual leave protected by the FMLA;

   d.     UAM treated White differently than persons who had not exercised their rights protected by the FMLA by denying her outside employment, changing her job duties, falsely berating her as "low

-30-

performing" and for requiring her students to report attendance and PDR hours, revoking her request to attend conferences, removing her accommodations to work non-consecutive in person classes, requiring her to meet with Tucker despite her complaints about her, revoking the offer for White to meet with a different vice chancellor, and constructively discharging her;

      e.    UAM denied White restoration to her previous work with the same conditions and benefits, in violation of the FMLA;

      f.    UAM has shifted its explanations about its purported reasons for denying White's right to return to job restoration under the FMLA; and

      g.    UAM further intimidated and discouraged White's exercise of her FMLA rights through these actions.

50.    UAM has therefore denied White substantive rights under the FMLA for reasons connected with her FMLA leave.  UAM has also shifted its explanations about the basis for denying White's right to return to work with full benefits.  It will be UAM's burden to prove it would have terminated White regardless of her FMLA leave.  *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 714–15 (8th Cir. 2008).  And UAM's

burden to prove the applicability of any FMLA exemption. It cannot meet these burdens. White's leave from work and request for her rights under the FMLA were motivating factors in UAM's decision to deny White reinstatement in full and constructively discharge her.

51.    UAM's violation of the FMLA was not in good faith and UAM has no reasonable grounds for believing its acts and omissions complied with the FMLA.

52.    White seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief. 29 U.S.C. § 2617; 29 C.F.R. § 825.220.

## COUNT III - FMLA RETALIATION

53.    White reincorporates and re-alleges paragraphs 1 through 52 by reference.

54.    At all times relevant to this complaint, UAM was a covered employer and White was a covered employee under the Family and Medical Leave Act. 29 U.S.C. §§ 2601–2654. UAM met all of the statutory standards for coverage. 29 U.S.C. §§ 2611(2)(B)(ii) & (4)(A), *et sequentes*; 29 C.F.R. §§ 825.104(a) & 825.110(a)(3). At all times relevant to this complaint, White was a covered employee under the FMLA. 29 U.S.C. § 2611(2)(A), *et sequentes*. White had been employed by UAM for at least twelve months and worked at least 1,250 hours during the previous twelve month period.

55.    White suffered a serious health condition as defined by the FMLA. She was diagnosed with a major medical condition. 29 C.F.R. § 825.113; 29 C.F.R. § 825.115. White obtained a medical certification regarding her serious health condition and timely communicated it to UAM as soon as practicable. 29 C.F.R. §§ 825.302–825.304. In the alternative, White provided UAM with sufficient information for UAM to reasonably determine that the FMLA applied to White's request for

approved leave. UAM accepted White's FMLA claim and approved her for FMLA-protected leave and should be equitably estopped from now taking a contrary position.

56.     The FMLA proscribes any action by UAM to discharge or in any other manner discriminate against White for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). UAM nevertheless subjected White to materially adverse employment actions motivated by White's protected FMLA conduct, including her assertion of her rights and opposition to UAM's refusal to allow White to exercise her rights. White had an absolute right under the FMLA to request FMLA leave, exercise that leave, to not be discouraged from taking FMLA leave, and to return to her previous position in accordance with the United States Department of Labor's interpretations of the FMLA. Specifically, the FMLA required UAM to allow White to request FMLA leave, take that leave, and return to her position with all benefits intact, without restraint of and in interference with her request for FMLA leave. UAM discriminated against White and treated her differently because of her attempts to exercise her rights under the FMLA and opposition to UAM's refusal to honor those rights:

-34-

a.       UAM planned to discourage and otherwise deny White from exercising her rights under the FMLA soon after she requested FMLA leave;

b.       UAM did, in fact, deny White her rights by changing her benefits and job duties;

c.       UAM repeatedly, and at times expressly, interfered with and exhibited animus toward White due to her desire to exercise her FMLA leave, and actual leave protected by the FMLA;

d.       UAM treated White differently than persons who had not exercised their rights protected by the FMLA by denying her outside employment, changing her job duties, falsely berating her as "low performing" and for requiring her students to report attendance and PDR hours, revoking her request to attend conferences, removing her accommodations to work non-consecutive in person classes, requiring her to meet with Tucker despite her complaints about her, revoking the offer for White to meet with a different vice chancellor, and constructively discharging her;

e.       UAM denied White restoration to her previous work with the same conditions and benefits, in violation of the FMLA;

f. UAM has shifted its explanations about its purported reasons for denying White's right to return to job restoration under the FMLA; and

g. UAM further intimidated and discouraged White's exercise of her FMLA rights through these actions.

57. UAM has therefore discharged and discriminated against White because of her opposition to UAM's violations of her rights under the FMLA. White's leave from work, request for her rights under the FMLA, and opposition to UAM's denial of those rights were motivating factors in UAM's decision to deny White her restoration to work and terminate her.

58. UAM's violation of the FMLA was not in good faith and UAM has no reasonable grounds for believing its acts and omissions complied with the FMLA.

59. White seeks all remedies available to her under the FMLA including lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; interest; an equal amount of lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual

monetary losses sustained as a direct result of the violation, and interest as liquidated damages; other prospective injunctive relief tailored to the harm suffered; a reasonable attorney's fee; reasonable expert witness fees; and other costs of the action as provided by law, prejudgment interest, and postjudgment interest, and other proper relief. 29 U.S.C. § 2617; 29 C.F.R. § 825.220.

## COUNT I - DISABILITY DISCRIMINATION

60.    White reincorporates and re-alleges paragraphs 1 through 59 by reference.

61.    This claim is brought under the Americans with Disabilities Act, as amended, and the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-101, *et sequiter*.

62.    Plaintiff is a person with a disability and each of those disabilities substantially limited her ability to enjoy major life activities, including her ability ambulate and stand for prolonged periods of time. Plaintiff was able to perform the essential functions of her job on or before the time she was treated differently and constructively terminated. UAM was an employer at all times relevant to this Complaint under the

Americans with Disabilities Act, as amended, and under the Arkansas Civil Rights Act.

63.   UAM knew of Plaintiff's disability which was a motivating factors in UAM's decision to treat Plaintiff differently because of her disability, including the following actions:

a.   Constructively terminating White;

b.   Treating White differently because of her reasonable accommodations, including harassing her and removing those accommodations;

c.   UAM did, in fact, deny White her rights by changing her benefits and job duties;

d.   UAM repeatedly, and at times expressly, interfered with and exhibited animus toward White due to her disability;

e.   UAM treated White differently than persons who had not exercised their rights protected by the ADA and ACRA by denying her outside employment, changing her job duties, falsely berating her as "low performing" and for requiring her students to report attendance and PDR hours, revoking her request to attend conferences, removing her accommodations to work non-consecutive in person classes, requiring her

to meet with Tucker despite her complaints about her, revoking the offer for White to meet with a different vice chancellor, and constructively discharging her; and

       f.    UAM further intimidated and discouraged White's exercise of her ADA and ACRA rights through these actions.

64.    On information and belief, similarly situated persons without a disability were treated better than Plaintiff regarding the above-described actions.

65.    Plaintiff seeks all remedies available to her under applicable law, including reinstatement, prospective injunctive relief, attorney's fees, costs, and all other proper relief.

## COUNT I - HOSTILE WORK ENVIRONMENT

66.    White reincorporates and re-alleges paragraphs 1 through 65 by reference.

67.    This claim is brought under the Americans with Disabilities Act, as amended, and the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-101, *et sequiter*.

68.    Plaintiff is a person with a disability and each of those disabilities substantially limited her ability to enjoy major life activities,

-39-

including her ability ambulate and stand for prolonged periods of time. Plaintiff was able to perform the essential functions of her job on or before the time she was treated differently and constructively terminated. UAM was an employer at all times relevant to this Complaint under the Americans with Disabilities Act, as amended, and under the Arkansas Civil Rights Act.

69.    UAM knew of Plaintiff's disability and tolerated a hostile work environment charged by Plaintiff's disability in violation of the ADA and ACRA, which caused the following adverse employment actions:

      a.    Constructively terminating White;

      b.    Treating White differently because of her reasonable accommodations, including harassing her and removing those accommodations;

      c.    Harassing and failing to stop harassment targeting White due to her use of certain writing utensils, requirement for early education students to report their PDR hours, removing White's permission to attend conferences or work outside her employment with UAM;

      d.     UAM furthered that hostile work environment by denying White her rights by changing her benefits and job duties and by otherwise denying and ignoring White's repeated complaints about her hostile work environment;

      e.     UAM repeatedly, and at times expressly, interfered with and exhibited animus toward White due to her disability;

      f.     UAM treated White differently than persons who had not exercised their rights protected by the ADA and ACRA by denying her outside employment, changing her job duties, falsely berating her as "low performing" and for requiring her students to report attendance and PDR hours, revoking her request to attend conferences, removing her accommodations to work non-consecutive in person classes, requiring her to meet with Tucker despite her complaints about her, revoking the offer for White to meet with a different vice chancellor, and constructively discharging her; and

      g.     UAM further intimidated and discouraged White's exercise of her ADA and ACRA rights through these actions, which all individually and collectively altered a term or condition of White's employment.

-41-

70.    On information and belief, similarly situated persons without a disability were treated better than Plaintiff regarding the above-described actions.

71.    Plaintiff seeks all remedies available to her under applicable law, including reinstatement, prospective injunctive relief, attorney's fees, costs, and all other proper relief.

## COUNT II - RETALIATION

72.    White reincorporates paragraphs 1 through 71 by reference.

73.    This Count is brought under the Americans with Disabilities Act as amended, and the Arkansas Civil Rights Act.    Each of those statutes protects persons who engage in protected activity from retaliation.

74.    White engaged in protected activities.    She opposed discrimination against herself, as detailed above.  She opposed UAM's actions to ignore her complaints, retaliate against her for being awarded reasonable accommodations, remove her reasonable accommodations, remove her right to work externally, oppose her disparate treatment due to her disability and requests for accommodation, and other acts of discrimination.  UAM declined to favorably alter its behavior in response

to these protected activities, instead increasing its discriminatory behavior and forcing White to resign.

75.     These activities are statutorily protected actions and UAM's adverse actions against White as detailed above are causally linked to those actions.  White's complaints to UAM were ignored, and White was constructively discharged.  Both the timing of these actions amidst White's protected activities and the disability, discrimination evidence as pleaded demonstrate a causal link between the two.

76.     White seeks all remedies allowed by the applicable ant-retaliation law, as specified above.

77.     White demands a trial by jury as to all issues so triable.

78.     White's damages as pleaded exceed $75,000.

WHEREFORE, Plaintiff Alisa M. White prays for judgment from and against Defendants Board of Trustees of the University of Arkansas; Kelly Eichler, Board Member of the University of Arkansas Board of Trustees, in her official capacity, Steve Cox, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Ed Fryar, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Ted Dickey, Board Member of the University of

Arkansas Board of Trustees, in his official capacity, Jeremy Wilson, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Col. Nathaniel Todd, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Kevin Crass, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Scott Ford, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Randy Lawson, Board Member of the University of Arkansas Board of Trustees, in his official capacity, Judd Deere, Board Member of the University of Arkansas Board of Trustees, in his official capacity; Tracy Tucker, individually and in her official capacity as Vice Chancellor of University of Arkansas Monticello; and Dawn Reed, individually and in her official capacity as Assistant Vice Chancellor of University of Arkansas, for all remedies available to her under applicable law, including back pay, back wages, liquidated damages, front pay, reinstatement, prospective injunctive relief tailored to the harm she suffered, compensatory damages, punitive damages, lost wages, lost salary, lost employment benefits, other compensation denied or lost, actual monetary losses sustained as a direct result of the violation, statutory damages, and interest; her attorney's fees; her reasonable expert

-44-

witness fees; and other costs of the action as provided by law, including prejudgment and postjudgment interest; for a determination that the Defendant's conduct was willful; for a declaration that Defendants' conduct violated the FMLA, ADA, and ACRA; and all other just and proper relief.

Respectfully submitted,

ALISA M. WHITE

Plaintiff

By: _____

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
Attorney for Plaintiff
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

## DEMAND FOR A JURY TRIAL

Comes ALISA M. WHITE and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands her right of trial by jury as to all issues so triable.

Respectfully submitted,

ALISA M. WHITE

Plaintiff

By:

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
Attorney for Plaintiff
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

**SSS Approval**

**Whiting Mary <whitingm@uamont.edu>**

Thu 8/17/2023 1:58 PM

To:Tucker Tracy <TuckerTS@uamont.edu>;Reed Dawn M. <ReedD@uamont.edu>
Cc:Whiting Mary <whitingm@uamont.edu>;Johnson Gracie <JohnsonG@uamont.edu>;White Alisa M. <WhiteA@uamont.edu>

Good Afternoon,

Alisa White is now registered with Student Special Services.

Approved accommodations include:
- Limited weight bearing at all times, to be discussed in an event of concern.
- Limited standing at all times, to be discussed in an event of concern.
- Preferential parking. Has a handicapped parking permit.
- Back supported work chair.
- Overall assessment of mobility concerns with duties and assignments.

Additional requests for any meetings with me present would need to be scheduled.

Thank you,
Mary

# Mary Whiting

Director of Admissions & Recruitment
Student Special Services
International Officer
 Student Success Center – Suite 100
 (870) 460-1226
     whitingm@uamont.edu



**First week of school**

Reed Dawn M. <ReedD@uamont.edu>

Thu 8/17/2023 6:49 PM

To:UAMCTC-Faculty <UAMCTC-Faculty@uamont.edu>;UAMCTC-Staff <UAMCTC-Staff@uamont.edu>

I just want to give a shout out to everyone for making this first week of school a success! Keep Kim and Susanne in your prayers as they had emergency surgeries this week but still continued to enroll and help students while in the hospital bed! The dedication to our students from each of you is what makes this school such a success! I am lucky to work with each of you! Hope you have a relaxing weekend!

Dawn

Get Outlook for iOS





**From:** Hyatt Rita <hyattr@uamont.edu>
**Sent:** Friday, September 22, 2023 9:57 AM
**To:** Blazier Michael <Blazier@uamont.edu>; Boice Daniel G. <Boice@uamont.edu>; Brandy Haley
<haley@uamont.edu>; Clayton Marsha <clayton@uamont.edu>; Hairston Brian W. <hairstonb@uamont.edu>;
Hargraves Elaine <HargravesE@uamont.edu>; Harper Steven <HarperS@uamont.edu>; Level Kim
<level@uamont.edu>; Reed Dawn M. <ReedD@uamont.edu>; Slater Shuneize E <SlaterS@uamont.edu>; Tucker
Tracy <TuckerTS@uamont.edu>; Ware Bob <wareb@uamont.edu>; Young Clinton D. <young@uamont.edu>
**Cc:** Wornick Bethany D. <HaydenB@uamont.edu>; Halley Crystal <HalleyC@uamont.edu>; Hyatt Rita
<hyattr@uamont.edu>
**Subject:** Annual Report of Outside Employment with attachments

Deans,

I have attached the UAM Policy and the Board Policy about Outside Employment of Faculty and Non-
Classified Staff. Please review the policy and complete the attached report. If your unit has no outside
employment to report mark the section "No Outside Employment to Report". Please submit your report
electronically to me by September 25, 2023. If you have any questions, please call 460-1333.

Thanks,
Rita Hyatt

Rita Hyatt | Administrative Analyst
University of Arkansas at Monticello | Office of Academic Affairs
O: 870-460-1333 | F: 870-460-1933 | hyattr@uamont.edu | uamont.edu





**Fw: Annual Report of Outside Employment with attachments**

Murphy P. Shannon <MurphyPS@uamont.edu>

Mon 9/25/2023 1:27 PM

To:Ballard Susanne <Ballard@uamont.edu>;Byrd Christopher <ByrdC@uamont.edu>;Daws, Paul D <Daws@uamont.edu>;
DuBose III James H. <dubose@uamont.edu>;Dubose Jeffrey Donnie <DuboseJD@uamont.edu>;Jeffers Jerry W
<JeffersJW@uamont.edu>;Jones Robby E <JonesRobby@uamont.edu>;Lindsey Alice J. <Lindsey@uamont.edu>;Noble Kayla J.
<NobleK@uamont.edu>;Owens Richard A. <OwensRA@uamont.edu>;Sellers Ginnie <SellersG@uamont.edu>;Upshaw Shela
<upshaw@uamont.edu>;Wallis Kim <wallisk@uamont.edu>;White Alisa M. <WhiteA@uamont.edu>

📎 3 attachments (280 KB)

Operating Pro 455.2 Outside Employment Form.pdf; Board Policy 450.1 Outside Employment for Faculty Certain Staff for
Compensation eff. 7 1 2023.pdf; ANNUAL REPORT ON OUTSIDE EMPLOYMENT OF FACULTY.rtf:

Please see attached forms. If this doesn't apply to you, please don't worry about it. If it applies, please
fill out and return to me by 4:00 p.m. today.

Thanks,

Shannon Murphy
Administrative Specialist III
University of Arkansas Monticello, CTC
870-460-2020



From: Tucker Tracy <TuckerTS@uamont.edu>
Sent: Monday, September 25, 2023 8:01 AM
To: Murphy P. Shannon <MurphyPS@uamont.edu>
Subject: FW: Annual Report of Outside Employment with attachments

Tracy S. Tucker, Ed. D.
Vice Chancellor
University of Arkansas at Monticello
College of Technology – Crossett
(870) 460-2027



Prior Approval of Outside Employment
University of Arkansas at Monticello
Operating Procedure 455.2

This form implements the University of Arkansas System Board Policy on outside employment (450.1)
passed in 1916 and revised most recently in March 2016. **Full-time faculty and non-classified staff are
required annually or as needed to obtain written approval from their supervisor prior to engaging
in outside employment.**

I request approval for outside employment as follows:
Beginning Date _Jan. 1, 2024_
Ending Date _Dec. 31, 2024_
Average Hours _5 hours_ per week ☑ or month ☐
_(as needed)_

The employee is required to state the following on the nature and source of outside employment:

- Name and address of employer: _Dawson Cooperative_
  _211 Clinton St._
  _Arkadelphia, AR_
- Specific explanation of the nature of employment, location, schedule: _Professional Development-Early Childhood_

- Whether or not the use of University facilities, property or personnel are requested in the employment: _No, but I store equipment in my office/closet at UAM_

- The expected benefit of the outside employment to professional development and to the University: _It keeps/allows me to stay up to date on laws in early childhood. It provided me with free staff Development in the area of Early Childhood._ _Keeps me informed about grants._

Check one of the following:
☑ I affirm that, to my knowledge, this outside employment will not create a conflict of interest or
commitment (see Operating Procedure 455.1) in my duties, responsibilities or obligations to the
University of Arkansas at Monticello.

☐ A possible conflict of interest may exist. I disclose the attached explanation of the nature of the
potential conflict.

Name _____
Title/Position _____
Department _____
Signature _Dr. Alesa White_       Date _9/25/2023_

E-MAILED SEP 2 5 2023

Approvals:

_____     _____
Supervisor                       Date

_____     _____
Vice Chancellor or Chancellor    Date

EXHIBIT
E
PENGAD 800-631-6989

The specific explanation of the nature of employment, location, schedule:

- <u>Nature:</u>  Some of the professional development offered is titled: "An Insight Into Children with Trauma" "Mean v. Bully, There is a Difference", "Building a Positive Classroom", "Creating Responsible Students".
- <u>Location:</u> Online and at local childcare centers. One center is 'Westside Baptist School' Hillsboro St., El Dorado, AR
- <u>Schedule:</u>  Non-work works- summers, holidays, weekends, some nights.

## UAM OPERATING PROCEDURE  455.2

## OUTSIDE EMPLOYMENT

While emphasizing the fact that full-time faculty and staff members (including, but not limited to, senior administrators) of the University are obligated to devote their working time and efforts primarily to University activities, the University recognizes that a limited amount of outside work for private compensation may be advantageous to all concerned. Such persons are therefore encouraged to engage in outside employment that will affirmatively contribute to their professional advancement or correlate usefully with their University work. This employment shall not interfere in any substantial way with the employee's University duties nor conflict with his/her University assignments.

Written approval from the direct supervisor shall be obtained in advance of such outside employment. Each Vice Chancellor's office shall keep records on outside employment by personnel in his/her department and shall prepare an annual report on such outside employment. The report should include actual time spent during the reporting period. Such records shall be reviewed periodically by the appropriate administrators and shall be submitted to the Chancellor by September 30 of each year.

It is the employee's responsibility to make clear that, with respect to the outside employment, he/she is not acting as an agent or representative of the University. University facilities or property shall not be used except with permission of the Executive Council, taking into account the best interests of the University, and the payment of appropriate fees may be required. Prior approval is also required for concurrent employment with another university unit or state agency, pursuant to Arkansas Code Ann. §19-4-1604 and Arkansas Code Ann. §6-63-307.

*Revised: June 19, 2024*
*March 8, 2022*

9/30/23, 11:43 PM                                    Mail - White Alisa M. - Outlook

**please fill out**

Reed Dawn M. <ReedD@uamont.edu>

Thu 9/28/2023 12:10 PM

To:Wallis Kim <wallisk@uamont.edu>;White Alisa M. <WhiteA@uamont.edu>;Dubose Jeffrey Donnie
<DuboseJD@uamont.edu>

📎 1 attachments (212 KB)

outside employment_20230928(1).pdf;

If you had outside employment from July 1, 2022 to June 30, 2023 please complete this form, back date it to July
1, 2022 and return it to me ASAP.

Thanks,


Dawn Reed, Assistant Vice Chancellor
UAM College of Technology-Crossett
870-460-2030
reedd@uamont.edu





Dr. Tucker,

Thank you for this list.  It is most helpful.

Concerning commencement (#4) if I may be permitted to walk to the instructor's sitting area just prior to the time for everyone else to walk out that would be most helpful.

*Dr. Alisa White, Ph.D.*

*Early Childhood Education Instructor*

**UAM College of Technology-Crossett**

*1326 Hwy 52 West   Crossett, AR  71635*

*870-364-6414;  FAX:  870-364-5707*

*870-460-2026 (direct line)*

*870-500-8052 (cell,*

**From:** Tucker Tracy <TuckerTS@uamont.edu>
**Sent:** Thursday, September 28, 2023 5:06 PM
**To:** White Alisa M. <WhiteA@uamont.edu>; Whiting Mary <whitingm@uamont.edu>
**Cc:** Tucker Tracy <TuckerTS@uamont.edu>
**Subject:** CONFIDENTIAL: Meeting follow-up

Good afternoon.

I wanted to take just a minute to follow up with some written notes from our meeting today.

1. Dr. White needs to provide Ms. Whiting with medical notes from a doctor to further/continue her registration with SSS.
2. There have been NO issues at CTC that need attention following the receipt by the VC of the accommodations from Ms. Whiting.
3. Dr. White will communicate with Dr. Tucker (either by absence form or email then form) if she is going to be absent. Simply putting the absence into WorkDay does not meet the requirements of the policy.
4. Dr. White indicated that she has issues standing. This is particularly an issue at graduation. Dr. Tucker suggested a reasonable accommodation for this event. Dr. Tucker further explained that staff will receive informational emails and updates about recruitment events, but, unless specifically stated, nothing is required.
5. Dr. White advised us that she is seeking medical documentation for FMLA for some of October, all of November and some of December. Dr. Tucker advised Dr. White that she was revoking the approval to attend the Early Childhood Conference, to which Dr. White stated that she was already working on a refund for the registration already paid. Dr. Tucker also indicated that she was not approving the concurrent employment form, starting 1/1/2024 at this time, due to the impending FMLA. Discussion was held about the need for our students and school to be the priority and this would be revisited at a later date, but it is not, at this time, approved.
6. Dr. Tucker asked for information about the Advisory Board. Dr. White is going to share information with Dr. Tucker about the Board. Dr. Tucker will make recommendations to members to be included in this group.

I tried to capture the highlights from our meeting. Please feel free to add to this email or make corrections.

Thanks.

tt



After more conversations, it is now clear to me that UAM-CTC does not have permission/approval to offer our early childhood "programs" online, meaning no more than 50% of the program classes required for a CP, TC or Associate degree, can be offered in an online format. We have been in violation of that requirement. Therefore, I am making a change to the following courses for the spring.

ECED 1043 – Dev/Curr for Early Childhood will be a hybrid class that meets on Thursdays from 4:15 - 5:45.
ECED 2073 – Tech Child Guidance will be a hybrid class that meets on Mondays from 6 - 7:30.

As I showed you yesterday, the following schedule is in place for other classes/offerings:
HOEC 2013 – Tech Literacy/Lang Arts for EC will meet on Tuesdays from 4:15 – 7.
HOEC 2023 – Tech Math/Science for EC will meet on Mondays from 4:15 – 5:45.
The Practicum classes are: ECED 1082 – Practicum 1, HOEC 2033 – Tech Child Care Practicum II, and ECED 1071 – Intro to Practicum, which is hybrid meeting face to face on Jan. 17 and 31, and Feb. 7 from 4:30 – 7:15.

As we discussed yesterday, and you agreed, this puts you into overload at 16 hours, so I will process that paperwork in January, if all these classes make.

Also, please provide me with a copy of the handbook that you use for your program. I would like to review it for my information.

Please let me know if you have any questions. Thanks so much...

Tt

Tracy S. Tucker, Ed. D.
Vice Chancellor
University of Arkansas at Monticello
College of Technology – Crossett
(870) 460-2027



**FMLA**

Tucker Tracy <TuckerTS@uamont.edu>
Wed 10/4/2023 11:39 AM
To:White Alisa M. <WhiteA@uamont.edu>
Cc:Hargis Jennifer <Hargis@uamont.edu>;Whiting Mary <whitingm@uamont.edu>

Dr. White – I want to provide you some clarifying information about FMLA. In the e-mail that you received for the University HR Department, it states that you are eligible for FMLA. That email simply means that the University's HR Department has determined that you met the federal requirements to be eligible for FMLA. That determination does not mean the same as your absence under FMLA being approved. When I spoke with Jennifer this morning, the HR Department is still awaiting the required paperwork for review to determine if the FMLA is approved.

I have received all the emails from you that you have sent to students about your expected absence. However, when I checked with HR this morning, I was informed that your leave has not been approved because the proper forms haven't been submitted for review, which is the approval process. I just wanted to make sure that you understand that "eligible" does not mean "approved" in this process.

Jennifer – please feel free to weigh in if I did not explain that correctly. I know that Dr. White has stated in a meeting and in emails to students that she won't be working after Oct. 10, but I have not yet received approval of that date, which is Tuesday!

Mary – just keeping you in the loop, as requested in our meeting.

Thanks, everyone!
tt

Tracy S. Tucker, Ed. D.
Vice Chancellor
University of Arkansas at Monticello
College of Technology – Crossett
(870) 460-2027





**From:** Manzella Katie M <Manzella@uamont.edu>
**Sent:** Wednesday, February 7, 2024 10:01 AM
**To:** White Alisa M. <WhiteA@uamont.edu>
**Cc:** Tucker Tracy <TuckerTS@uamont.edu>
**Subject:** Meeting

Good morning,

I would like to schedule a meeting for us to discuss Monica and your attendance policy  What day and time would you be available? I will be out this afternoon for a meeting on the Monticello campus.

Katie Manzella, Director of Student Services

UAM College of Technology-Crossett

(870)460-2004

manzella@uamont.edu



EXHIBIT
J
PENGAD 800-631-6989

4/9/24, 11:45 AM                    Re: Judges Needed: Southeast Arkansas Regional Science Fair - White Alisa M. - Outlook

**From:** Burrows Ross <Burrows@uamont.edu>
**Sent:** Friday, March 1, 2024 1:27 PM
**To:** White Alisa M. <WhiteA@uamont.edu>
**Subject:** Re: Judges Needed: Southeast Arkansas Regional Science Fair

Hi Alisa,

Judging is light work. The fair is small this year so you would only need to talk to several students. You can take breaks and the time you need. We would love to see you there. Will you come and judge? Best wishes,

Ross B.
SEARSF Director.

**From:** White Alisa M. <WhiteA@uamont.edu>
**Sent:** Friday, March 1, 2024 1:15 PM
**To:** Burrows Ross <Burrows@uamont.edu>
**Cc:** Tucker Tracy <TuckerTS@uamont.edu>; Reed Dawn M. <ReedD@uamont.edu>; Halley Crystal <HalleyC@uamont.edu>; Murphy P. Shannon <MurphyPS@uamont.edu>; Franklin Lateasha <FranklinL@uamont.edu>; Manzella Katie M <Manzella@uamont.edu>
**Subject:** Re: Judges Needed: Southeast Arkansas Regional Science Fair

I'm interested in serving as a judge, but I have a couple of questions before I say, "Yes".
   1. Will I have to stand or walk for long periods of time (without breaks)?
   2. What time will I be required to be at the event?

I taught 5th grade science for several years, and I'm particularly interested in life science.

Thank You,
*Alisa White, Ph.D.*
*Early Childhood Education Instructor*
*University of Arkansas at Monticello*
*1326 Hwy 52 West,  Crossett, AR  71635*
*870-364-6414;  FAX:  870-364-5707*
*870-460-2026 (direct line)*
*870-500-8052 (cell)*

**From:** Halley Crystal <HalleyC@uamont.edu>
**Sent:** Friday, March 1, 2024 10:33 AM
**Subject:** Judges Needed: Southeast Arkansas Regional Science Fair



Dear Colleagues,

The Southeast Arkansas Regional Science Fair (SEARSF) is coming soon. Given the turnout last year, I expect that several middle and high schools plan to bring students to our fair on

Your support at this event is essential. Some of you have served as judges in the past, and we appreciate you for helping us again this year. If you have not been a judge, please join us in making this event successful!

## Request

**White Alisa M. <WhiteA@uamont.edu>**

Mon 3/11/2024 10:30 AM

To:Tucker Tracy <TuckerTS@uamont.edu>,Reed Dawn M. <ReedD@uamont.edu>
Cc:Coon-Loyd Sage <coons@uamont.edu>

📎 1 attachments (2 MB)

A_White_Dr_Rec.pdf;

Greetings,

Please call me or email me when we need to discuss a message from me to the students, my request to attend a conference, or similar matters. I want to be a team player and answer any questions about messages or conferences. However, I do not welcome being called into the office for matters that can easily be handled with a phone call or email, and I ask that I only be called in when the problem cannot be solved by email/phone. This support will help me to remain productive as I continue to teach my students, apply for grant awards for UAM-CTC; help students receive scholarships, free textbooks & materials, and increase enrollment in my program.

Additionally, I have physical challenges and do not need to be on my feet unless it is necessary (i.e. teaching, attending faculty meeting, discussions not solved by phone/email). Please see the attached documentation from my physicians regarding my health. Let me know if my physicians need to provide additional information as they wrote these letters when I thought I was going to teach four consecutive nights.

Dr. Tucker, thank you for allowing me to schedule my office hours Wed. & Thurs. from 11:00 am-1:00 pm this allows me to schedule my medical appointments more easily.

Respectively,

*Alisa White, Ph.D.*
*Early Childhood Education Instructor*
**UAM College of Technology-Crossett**
*1326 Hwy 52 West, Crossett, AR 71635*
*870-364-6414; FAX 870-364-5707*
*870-460-2026 (direct line)*
*870-500-8052 (cell)*

UAM Exh 6

EXHIBIT
L
PENGAD 800-681-6989

# ARKANSAS HEART HOSPITAL
## CLINIC

Alisa White

117 GILL RD

CROSSETT AR 71635-4873



Date: 12/07/2023

To Whom It May Concern:

Alisa White is a patient of mine at the Arkansas Heart Hospital Clinic. Due to health reasons, it is not recommended that Ms. White be on her feet standing on any consecutive days while working.

If you have any questions, please contact my nurse, Amber, at (501) 664-5860.

Sincerely,

Nureddin Almaddah, M.D.

Arkansas Heart Hospital Clinic

## THE ARTHRITIS & DIABETES CLINIC, INC.
### (A Medical Corporation)

Jyothi Mallepalli MD, M.R.C.P
Catherine Midyett, APRN, FNP-C
Jeseta Lawrence, APRN, FNP-C
Gabby Nicolle, APRN, FNP-C

3402 Magnolia Cove
Monroe, LA  71203
Phone: 318-388-5830
Fax:    318-322-1249

November 30, 2023

RE: Alisa White
DOB: ████████

To Whom it May Concern,

    I am writing to you on behalf of Mrs. Alisa White. She is a patient in our clinic, receiving treatment for ▓▓▓ ░░░░░░░░░░, ░░░░ ░░░░░, and ░░░░░░░░░░░░░. Her joint complaints are primarily in her feet and legs, with continued joint pain, stiffness, and swelling. Working four nights in a row is causing ░░░░░ ░░to flare in her feet especially. It would be to her benefit to have an interrupted work schedule. If you have any questions, please feel free to contact me. Thank you for your consideration.

Sincerely,

Dr. Jyothi Mallepalli

**RE: Request**

Tucker Tracy <TuckerTS@uamont.edu>

Tue 3/12/2024 9:05 AM

To:Reed Dawn M. <ReedD@uamont.edu>;White Alisa M. <WhiteA@uamont.edu>;Coon-Loyd Sage <coons@uamont.edu>

Good morning.

On Monday, March 11, 2024, when I returned to campus from meetings in Monticello, Dawn made me aware of her concerns about the email she received from Dr. White, which is below. Dawn does not feel that all the information from Dr. White is accurate. She denies that she gave the pens, raised her voice or made a face at her.

After Dawn's different recollection of the event, I felt it was best to gain other insights into the interaction.

This morning, Tuesday, March 12, 2024, at 8:25 AM, I questioned Frank Higginbotham. Mr. Frank's recollection of the incident is transcribed below:

*TT: Mr. Frank, please tell me about the events that occurred on Friday pertaining to pens, Dr. White and Dawn.*

*FH: Dr. White asked me to get her some pens for her to use with the students. She stated she thought they were going to bring her some, but never did.*

*I came to the office to get some pens. FH asked Shannon for some pens and she tried to give him some of the recruiting pens. Dawn told Shannon that we can't use those and they got some other pens from the supply in the closet. Shannon told me to make sure to tell her (Dr. White) to return them to the front desk.*

*I took the pens and headed to Dr. White's room and Dawn was right behind me headed down the hallway.*

*I gave Dr. Whtie the pens and told her to make sure to return them to the front office. Dawn stopped and stepped into the room and told her to return them to the front office because they were from the supply closet.*

*We left her room.*

*TT: Did you hear Dawn raise her voice at Dr. White?*
*FH: No*
*TT: Was Dawn's face angry at Dr. White?*
*FH: No*
*TT: Did you feel any tension in the interaction in the room between you, Dr. White and Dawn?*
*FH: No, Dr. White said okay and went on about her stuff.*

*FH: After the event, I walked down the hallway to check to help get the pens back to the office and met Dr. White headed to the office. I took the pens from her and returned them to the office.*

*TT: Was there anything abnormal, aggressive, inappropriate, or other about the interaction between Dawn and Dr. White?*
*FH: No, it was a "normal" everyday exchange. I did wonder to myself why Dr. White waited to the last minute to get pens and had not asked for them ahead of time.*

**EXHIBIT**

/\/\

PENGAD 800-631-6989

**RE: Voice Mail**

Coon-Loyd Sage <coons@uamont.edu>
Tue 4/2/2024 11:04 AM
To:White Alisa M. <WhiteA@uamont.edu>
Cc:Doss Peggy <dossp@uamont.edu>;Halley Crystal <HalleyC@uamont.edu>

Dr. White,

I understand that you are not satisfied with the outcome of the previous conversations regarding your complaint. I have spoken with Dr. Doss, and, because Dr. Doss would be the final decision-maker should you proceed with a formal grievance, she has designated VC Crystal Halley to hear your concerns if you wish to continue the informal resolution process. I would sit in on the meeting with the two of you as the Human Relations Officer. We are hopeful that this meeting will lead to a satisfactory resolution of your concerns. If you decide you would like to pursue this course, please let me know of some times and dates that you are available to meet so I can coordinate with VC Halley.

Thank you,

Sage Loyd
Senior Project Manager
& Director of Grants
University of Arkansas at Monticello
P.O. Box 3597
Monticello, AR 71656
Phone: 870-460-1422



**UAM**
**UNIVERSITY OF**
**ARKANSAS AT**
**MONTICELLO**

**From:** White Alisa M. <WhiteA@uamont.edu>
**Sent:** Friday, March 22, 2024 6:40 PM
**To:** Coon-Loyd Sage <coons@uamont.edu>
**Subject:** Re: Voice Mail
**Importance:** High

Greetings,
I have an attorney, and I prefer to not proceed with the internal complaint process now that I have legal representation. The situation is too stressful for me, particularly since the person I am being requested to meet with is the one who I allege to be discriminating against me. I already have been caused a lot of stress and this would simply make it worse.
Sincerely,

*Alisa White, Ph.D.*
*Early Childhood Education Instructor*
***UAM College of Technology-Crossett***





EXHIBIT
N

**Re: Voice Mail**

White Alisa M. <WhiteA@uamont.edu>
Wed 5/8/2024 12:49 AM
To:Coon-Loyd Sage <coons@uamont.edu>

📎 1 attachments (3 MB)
O_Employment.pdf;

Sage,
Would I be permitted to share all of my concerns with Dr. Halley, including Dr. Tucker's refusal to allow me to do outside employment due to my FMLA (see attachment) which I spoke to you about March 6?

*Alisa White, Ph.D*
*Early Childhood Education Instructor*
*UAM College of Technology - Crossett*
*1326 Hwy 52 West, Crossett, AR 71635*
*870-364-6414, FAX. 870-364-5707*
*870-460-2026 (direct line)*
*870-500-8052 (cell)*

**From:** Coon-Loyd Sage <coons@uamont.edu>
**Sent:** Tuesday, April 2, 2024 11:03 AM
**To:** White Alisa M. <WhiteA@uamont.edu>
**Cc:** Doss Peggy <dossp@uamont.edu>; Halley Crystal <HalleyC@uamont.edu>
**Subject:** RE: Voice Mail

Dr. White,

I understand that you are not satisfied with the outcome of the previous conversations regarding your complaint. I have spoken with Dr. Doss, and, because Dr. Doss would be the final decision-maker should you proceed with a formal grievance, she has designated VC Crystal Halley to hear your concerns if you wish to continue the informal resolution process. I would sit in on the meeting with the two of you as the Human Relations Officer. We are hopeful that this meeting will lead to a satisfactory resolution of your concerns. If you decide you would like to pursue this course, please let me know of some times and dates that you are available to meet so I can coordinate with VC Halley.

Thank you.

Sage Loyd
Senior Project Manager
& Director of Grants
University of Arkansas at Monticello
P.O. Box 3597
Monticello, AR 71656
Phone: 870-460-1422



EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | |

| and EEOC |
|---|
| State or local Agency, if any |

| Name (indicate Mr. Ms. Mrs.)<br>Alisa M. White | Home Phone (Incl. Area Code)<br>870-500-8052 | Date of Birth |
|---|---|---|

| Street Address<br>117 Gill Street, Crossett, AR, 71635 | City, State and ZIP Code<br>Email: amwhite@ualr.edu | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>University of Arkansas Monticello | No. Employees, Members<br>427 | Phone No. (Include Area Code)<br>870-460-1026 |
|---|---|---|

| Street Address<br>346 University Dr. | City, State and ZIP Code<br>Monticello, AR 71656 | |
|---|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE   __ COLOR __ SEX __ RELIGION __ NATIONAL ORIGIN | Earliest 08/17/2023   Latest 05/08/2024 |
| _X_ RETALIATION   __ AGE  _X_ DISABILITY  _X_ OTHER (Specify below.) | _X_ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

I have been a Workforce Education Instructor at the University of Arkansas at Monticello for 14 years. I have documented impairments (plantar fasciitis and neuropathy) which substantially interfere with major life activities of walking and standing for extended periods and qualify as disabilities under the ADA. My impairments never affected my job performance. On 8/17/23, I was approved accommodations for my disabilities. The Vice Chancelor (VC) and Assistant Vice Chancellor (AVC) were informed in an email of my approved accommodations. Shortly after the email was sent, the AVC made mocking jesters in passing and sent out a faculty wide email about teaching from hospital beds. After I requested FMLA leave in September 2023, the VC refused to sign my outside work form due to my pending FMLA leave. Other employees, however, had no problem getting approval for outside work. I informed the VC that my outside work had already been approved by the former VC. Upon the VC learning of this, the VC commented about my low performance in front of others. Between 9/10/23-9/30/23, the VC called me a low performer on 6 other occasions, but I had only positive performance reviews during my previous 13 years and have no written disciplinary actions or warnings. The VC emailed me later saying that being eligible and approved for FMLA leave aren't the same thing. I took FMLA leave from 10/10/23-12/14/23.

On 2/26/24, I emailed the VC to see if I could attend a conference that would benefit our program and was at no cost for UAM. The VC called me into her office alleging it was paid for because I was externally working, reiterating I wasn't allowed to do any outside work. She approved the training but changed her mind 2 days later because I would miss a faculty meeting. On 3/6/24, I reported to HR personnel the harassment and discrimination I had been subjected to because of my disability. I was informed the internal complaint process began with expressing to the VC and AVC their behavior was unwelcome and must stop. Before I had the opportunity to do so, the AVC came into my classroom on 3/8/24 harassing me. On 3/11/24, I informed the VC and AVC that their behavior was unwelcome and had to stop. A few days after, the VC requested I meet with her to discuss my complaint. I then inquired into the UAM harassment policy with HR, who informed me that the next step would be to meet with the VC. The Chancellor also sent me an email in hopes of persuading me to meet with the VC. Nowhere in UAM's policy does it state this is the next step of the internal process, so I chose to discontinue the UAM reporting process. On 4/2/24, I was contacted by HR regarding my previous complaints and told that a different VC could be designated to hear my concerns if I wanted to continue with the informal resolution process. I inquired about this offer on 5/5/24. On 5/8/24, I was told that I only had a 30-day time limit for previous complaints and if a new incident occurred within the past 30 days, they needed to know what informal resolution steps I had taken.

I have been harassed and disparately treated because of my disabilities and subjected to a hostile work environment. A reasonable employee in my position would have found these combined actions to be materially adverse, creating an abusive work environment and been dissuaded from continuing the complaint process having to report to the VC, my harassing supervisor. My employer's actions are in violation of the Americans with Disabilities Act of 1990, as amended.



EXHIBIT
P

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| 06/17/2024     *Alisa Marie White*<br>_Date_     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Little Rock Area Office**
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/14/2025

**To:** Alisa  M. White
117 Gill Street
Crossett, AR 71635
Charge No: 832-2024-00189

EEOC Representative and email:    Anabel Grunauer
Investigator
anabel.grunauer@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 832-2024-00189.

On behalf of the Commission,

Digitally Signed By:William A Cash
04/14/2025
William A Cash
Area Office Director



**Cc:**
Sage Loyd
University of Arkansas Monticello
PO Box 3597
Monticello, AR 71656

Amber Schubert
University of Arkansas System Office
2404 N University Ave.
Little Rock, AR 72207


Lucy Fitzhugh
Punchwork Law Esq.
1 Riverfront Rd, Ste 745
North Little Rock, AR 72114


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 832-2024-00189 to the

District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 832-2024-00189 to the District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.